Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISS LAW**
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: (310) 208-2800
Facsimile: (310) 209-2348

*Counsel for Plaintiff*

[Additional Counsel in Signature Block]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN BUSHANSKY, derivatively on behalf of Nominal Defendant DOXIMITY, INC., | Civil Action No. |
| Plaintiff, | **VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT** |
| vs. | |
| JEFFREY TANGNEY, REGINA BENJAMIN, TIMOTHY CABRAL, KEVIN SPAIN, KIRA WAMPLER, PHOEBE YANG, and ANNA BRYSON, | **DEMAND FOR JURY TRIAL** |
| Defendants, | |
| and | |
| DOXIMITY, INC., | |
| Nominal Defendant. | |

Plaintiff Stephen Bushansky, by the undersigned attorneys, brings this stockholder derivative action on behalf of nominal defendant Doximity, Inc. ("Doximity" or the "Company") against the current members of the Company's Board of Directors (the "Board") and the Company's Chief Financial Officer ("CFO") (the "Individual Defendants") for their breaches of fiduciary duties, violations of the federal securities laws, and other misconduct that resulted in material damage to the Company and its stockholders. These allegations are made upon personal knowledge with respect to Plaintiff and, as to all other matters, upon information and belief based upon the investigation and

- 1 -
VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

analysis by Plaintiff's counsel, including, among other things, a review of the Company's press releases and public filings with the United States Securities and Exchange Commission ("SEC"), corporate governance documents published on the Company's website, a review of the securities class action complaint filed against the Company and its officers and directors, transcripts of Doximity conference calls with financial analysts and investors, news reports, financial analyst reports, and other publicly available information about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations after a reasonable opportunity for discovery.

## I.        NATURE OF THE ACTION

1.      This is a stockholder derivative action brought against certain of the Company's directors and officers for their breaches of fiduciary duties and violations of the federal securities laws, as well as other misconduct, which resulted in substantial damage to the Company and its stockholders.

2.      Doximity operates a digital platform which serves as a communication and collaboration hub for medical professionals and offers a newsfeed and online tools to improve clinician productivity. Doximity's platform is free for members to use.  Revenue from the platform is earned from customers, such as pharmaceutical manufacturers and healthcare companies, who pay subscription fees to advertise their products and services on the platform.

3.      On May 16, 2023, the Company provided revenue guidance of revenue between $500 to $506 and adjusted EBITDA of between $216 and $222 million for fiscal year 2024.  On August 8, 2023, the Company substantially reduced the guidance provided only a few months earlier to revenue of between $452 million and $468 million, a reduction of 10.1% to 7.8%, and to adjusted EBITDA of between $193 million and $209 million, a reduction of 11.3% to 6%. On a conference call with financial analysts and investors concerning the financial results, Chief Executive Officer ("CEO") Jeffrey Tangney ("Tangney") pinned the slashed guidance on the fact that Doximity's "upsells have now slowed for 2 years in a row," admitted that the Company had failed to interface with clients

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

enough to secure crucial upsells and acknowledged that the effects of "macro headwinds" on the pharmaceutical industry was slowing Doximity's growth dramatically. CFO Anna Bryson ("Bryson") confirmed that the Company would likely face continued upsell underperformance in the near future. The Company further announced a 10% reduction of its workforce, which would cost the Company between $8 to $10 million in severance, extended health care coverage, and other related costs.

4.     In April 2024, Jehoshaphat Research issued a report (the "Jehoshaphat Report") disclosing that Doximity's underlying sales were declining at a rate of 3-6% and that the Company's revenues had not increased since fiscal 2022.

5.     In the wake of the disclosures regarding the Company's true financial condition, the slashed financial guidance for revenue and adjusted EBITDA, and the workforce reductions, as well as the related financial impact thereof, Doximity's stock spiraled downward by nearly 23%, financial analysts downgraded, and cut their price targets for, the Company's stock, and securities class action lawsuits began to be filed against the Company, CEO Tangney, and CFO Bryson. As such, the Company is now subject to substantial liability and will be forced to expend substantial sums to defend itself, as well as its directors and officers.

6.     During the time that the Company's stock was inflated due to the false and misleading statements and material omissions disseminated regarding the Company's financial condition and business prospects, the Individual Defendants, in breach of their fiduciary duties, caused Doximity to repurchase more than three million shares of its Class A commons stock at inflated prices for over $100 million.  As the Company was being caused to repurchase its stock on the open market, the Individual Defendants, while in possession of material non-public information regarding the Company's true financial condition and business prospects, were selling their own Doximity shares into the market, reaping nearly $4.4 million in proceeds.

7.     As a result of the Individual Defendants' breaches of fiduciary duty and other misconduct, Doximity has sustained substantial damage and irreparable injury to its reputation.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

Through this action, Plaintiff seeks to recover for the Company its damages and remediate the internal control weaknesses that afflict Doximity.

8. Plaintiff did not make a demand prior to bringing this action because it would be futile. The Company's directors are neither disinterested nor independent. In the absence of this action, Doximity will neither recover its damages nor properly remediate the weaknesses in its internal controls and corporate governance practices and procedures.

II. **JURISDICTION AND VENUE**

9. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), SEC Rule 14a-9 (17 C.F.R. § 240.14a-9) promulgated thereunder, and for contribution pursuant to Section 21D of the Exchange Act. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

10. This Court has jurisdiction over each Defendant named herein because Doximity maintains its headquarters and does substantial business in this District and, as such, each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

11. This action is not a collusive one to confer jurisdiction on a court of the United States that it would not otherwise have.

12. Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b), where the Company maintains its headquarters and where it conducts substantial business.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

III.     **THE PARTIES**

    A.     **Plaintiff**

    13.     Plaintiff Stephen Bushansky purchased Doximity stock on June 24, 2021, and has held Doximity common stock continuously since that time. As such, Plaintiff was a shareholder at the time of the transactions complained of herein.

    B.     **Defendants**

        1.     **Nominal Defendant Doximity**

    14.     Doximity is a Delaware corporation with its principal executive offices located at 500 3rd Street, San Franciso, CA 94107. Its Class A common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "DOCS."

        2.     **Individual Defendants**

    15.     Defendant Tangney is the Co-founder and CEO of Doximity and has served as Board Chair and a Doximity director since the Company's inception in April 2010.  As of April 1, 2024, Tangney, through his personal stockholdings and a family trust, beneficially owned 2,299,350 Doximity Class A Shares and 52,783,830 Doximity Class B Shares,[1] with 67% of the Company's total voting power. Since 2022, Tangney received the following compensation:

| YEAR | SALARY | ALL OTHER COMPENSATION | TOTAL |
|------|--------|------------------------|-------|
| 2024 | $295,000 | $3,869 | $298,869 |
| 2023 | $240,000 | $3,726 | $243,726 |
| 2022 | $240,000 | $2,388 | $243,388 |

---

[1] Each share of Class A common stock is entitled to one vote and each share of Class B common stock is entitled to ten votes.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

16.     Defendant Regina Benjamin ("Benjamin") is a Doximity director since September 2020 and a member of the Audit Committee and Nominating and Corporate Governance Committee. In 2024, Benjamin received the following compensation:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
|---|---|---|
| $44,000 | $189,937 | $233,937 |

17.     Defendant Timothy Cabral ("Cabral") is a Doximity director since September 2020 and Chair of the Audit Committee. In 2024, Cabral received the following compensation:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
|---|---|---|
| $50,000 | $189,937 | $239,937 |

18.     Defendant Kevin Spain ("Spain") is a Doximity director since March 2011 and a member of the Audit Committee and the Compensation Committee. Since 2011, Spain has served as a general partner of Emergence Capital Partners ("Emergence Capital"), a venture capital firm, and served as a principal of Emergence Capital from September 2006 to March 2011. As of April 1, 2024, Emergence Capital owns nearly 10% of Doximity's stock.

19.     As of April 1, 2024, Spain beneficially owns 957,665 Doximity Class A shares and 12,534,728 Doximity Class B shares, with 16.9% of the Company's total voting power. In 2024, Spain received the following compensation:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
|---|---|---|
| $52,000 | $189,937 | $241,937 |

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

1     20.     Defendant Kira Wampler ("Wampler") is a Doximity director since March 2020,

2 Chair of the Nominating and Corporate Governance Committee, and a member of the Compensation

3 Committee. In 2024, Wampler received the following compensation:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
|---|---|---|
| $44,000 | $189,937 | $233,937 |

    21.     Defendant Phoebe Yang ("Yang") is a Doximity director since August 2022 and a

member of the Nominating and Corporate Governance Committee and the Compensation Committee.

In 2024, Yang received the following compensation:

| FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
|---|---|---|
| $40,000 | $189,937 | $229,937 |

    22.     Defendant Bryson is Doximity's CFO since February 2021. Prior to serving as CFO,

Bryson served various senior roles within the Company, including most recently as Vice President of

Strategic Finance, Financial Planning, and Analysis. Since 2022, Bryson received the following

compensation:

| YEAR | SALARY | STOCK AWARDS | NON-EQUITY INCENTIVE PLAN COMPENSATION | ALL OTHER COMPENSATION | TOTAL |
|---|---|---|---|---|---|
| 2024 | $316,667 | $3,158,121 | $387,612 | $3,807 | $3,866,207 |
| 2022 | $300,000 | N/A | $150,000 | $3,709 | $453,709 |
| 2021 | $300,000 | N/A | $100,000 | $3,211 | $403,211 |

    23.     Defendants Tangney, Benjamin, Bryson, Cabral, Spain, Wampler, and Yang are

referred to herein as the "Individual Defendants."

## IV.        THE INDIVIDUAL DEFENDANTS' DUTIES

24.     By reason of their positions as officers or directors of Doximity and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed and owe Doximity and its shareholders, fiduciary obligations of loyalty, good faith, due care, and candor, and were and are required to use their utmost ability to control, manage, and oversee Doximity in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Doximity and its shareholders to benefit all shareholders equally and not in furtherance of their own personal interests or benefit.

25.     The Individual Defendants, because of their positions of control and authority as directors and officers of Doximity, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

26.     As officers and directors of a publicly traded company whose common stock was registered with the SEC and trades on the NYSE, the Individual Defendants also owed a duty to ensure the dissemination of accurate, complete, and truthful information concerning Doximity's financial condition, operations, products, internal controls, and business prospects. In addition, the Individual Defendants had a duty to cause the Company to disclose in its regulatory filings with the SEC all material facts so that the market price of the Company's shares would be based upon accurate information. In order to meet these duties, the Individual Defendants were required to exercise reasonable control and supervision over Doximity's management, policies, and internal controls.

27.     At all times relevant hereto, the Individual Defendants were the agents of each other and Doximity and were always acting within the course and scope of such agency.

28.     The Individual Defendants were and are also subject to particularized duties pursuant to specific policies in effect at Doximity.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

**A.     Additional Duties Under Doximity's Code Of Conduct**

29.     Doximity's Code of Business Conduct and Ethics ("Code of Conduct") applies to employees, the members of the Board, and all members of senior management, including the CEO and CFO.

30.     The Code of Conduct requires every officer, director, and employee to report any potential violations of the Code of Conduct to either the General Counsel or Chief Compliance Officer or submit a complaint online or by voicemail.

31.     The Code of Conduct obligates honest and ethical conduct and fair dealing:

Employees, officers and directors should endeavor to deal honestly, ethically and fairly with the Company's suppliers, customers, competitors and employees. Statements regarding the Company's products and services must not be untrue, misleading, deceptive or fraudulent. You must not take unfair advantage of anyone through manipulation, concealment, abuse of privileged information, misrepresentation of material facts or any other unfair-dealing practice.

32.     The Code of Conduct prohibits insider trading while in possession of material non-public information:

Employees, officers and directors who have material non-public information about the Company or other companies, including our suppliers and customers, as a result of their relationship with the Company are prohibited by law and Company policy from trading in securities of the Company or such other companies, as well as from communicating such information to others who might trade on the basis of that information.

33.     The Code of Conduct requires that all books, records and accounts of Doximity should accurately and fairly reflect all business transactions. The Code of Conduct mandates:

Employees, officers and directors must honestly and accurately report all business transactions. You are responsible for the accuracy of your records and reports. Accurate information is essential to the Company's ability to meet legal and regulatory obligations. All Company books, records and accounts shall be maintained in accordance with all applicable regulations and standards and accurately reflect the true nature of the transactions they record. The financial statements of the Company shall conform to generally accepted accounting rules and the Company's accounting policies. No undisclosed or unrecorded account or fund shall be established for any purpose. No false or misleading entries shall be made in the Company's books or records for any reason, and no disbursement of corporate funds or other corporate property shall be made without adequate supporting documentation.

34.     All employees, the Board, and members of senior management are required to provide full, fair, accurate, timely and understandable disclosure in reports and documents filed with, or submitted to, the SEC and in other public communications.

**B.     Additional Duties Of Audit Committee Members**

35.     The Audit Committee Charter sets forth additional duties for members of the Audit Committee and provides that members are obligated to assist the Board in its oversight of, among other things, internal audit, financial reporting and legal matters; the integrity of the Company's financial statements; and the Company's compliance with legal and regulatory requirements.

36.     The Audit Committee members are required to, among other things:

- Oversee the work of the independent auditors (including resolution of disagreements between management and the independent auditors regarding financial reporting) engaged for the purpose of preparing or issuing an audit report or related work or performing other audit, review or attest services for the Company;

- Obtain and review a report or reports from the independent auditors describing (1) the independent auditors' internal quality-control procedures, and (2) any material issues raised by the most recent internal quality-control review or peer review of the independent auditor;

- Review and evaluate the performance of the independent auditors and the lead partner;

- Review the overall audit plan (both internal and external) with the independent auditors and the members of management who are responsible for preparing the Company's financial statements, including the Company's Chief Financial Officer and/or principal accounting officer or principal financial officer;

- Review, and discuss with management and with the independent auditors, the Company's annual audited financial statements, including (a) all critical accounting policies and practices used or to be used by the Company, (b) the Company's disclosures under "Management's Discussion and Analysis of Financial Conditions and Results of Operations" prior to the filing of the Company's Annual Report on Form 10-K, and (c) any significant financial reporting issues that have arisen in connection with the preparation of such audited financial statements;

- Review analyses prepared by management and/or the independent auditors setting forth significant financial reporting issues and judgments made in connection with the preparation of the financial statements, including analyses of the effects of alternative GAAP methods on the financial statements;

- Review and discuss with the independent auditors (outside of the presence of management) how the independent auditors plan to handle their responsibilities under the Private Securities Litigation Reform Act of 1995, and request assurance from the

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

independent auditors that Section 10A(b) of the Exchange Act has not been implicated;

- Review and discuss with the CEO and CFO of the Company (1) all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the Company's ability to record, process, summarize and report financial information required to be disclosed by the Company in the reports that it files or submits under the Exchange Act, within the time periods specified in the SEC's rules and forms, and (2) any fraud involving management or other employees who have a significant role in the Company's internal control over financial reporting;

- Recommend to the Board whether the Company's audited financial statements should be included in the Company's Annual Report on Form 10-K for the last fiscal year;

- Review and discuss with management and the independent auditors, in each case prior to the filing of the Company's Quarterly Reports on Form 10-Q, (1) the Company's quarterly financial statements and the Company's related disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations," (2) such issues as may be brought to the Audit Committee's attention by the independent auditors pursuant to Statement on Auditing Standards No. 100, and (3) any significant financial reporting issues that have arisen in connection with the preparation of such financial statements;

- Discuss the Company's earnings press releases, as well as financial information and earnings guidance provided to analysts and rating agencies, including, in general, the types of information to be disclosed and the types of presentation to be made (paying particular attention to the use of "pro forma" or "adjusted" non-GAAP information);

- Discuss the guidelines and policies that govern the process by which the Company's exposure to risk is assessed and managed by management;

- Discuss or consider the Company's major financial risk exposures and the steps that the Company's management has taken to monitor and control such exposures, including financial, operational, privacy, data security, regulatory compliance and reputational risk;

- Establish procedures and review and assess the adequacy for the procedures for (1) the receipt, retention and treatment of complaints received by the Company regarding accounting, internal accounting controls, or auditing matters and (2) the confidential, anonymous submission by employees of the Company of concerns regarding questionable accounting or auditing matters;

- Regularly report to and review with the Board any issues that arise with respect to the quality or integrity of the Company's financial statements, the Company's compliance with legal or regulatory requirements, the performance and independence of the independent auditors, the performance of the internal audit function and any other matters that the Audit Committee deems appropriate or is requested to review for the benefit of the Board; and

- Discuss with management legal matters (including pending or threatened litigation) that may have a material effect on the Company's financial statements or its compliance policies and procedures.

### C. Additional Duties Of Nominating And Corporate Governance Committee Members

37.    The Charter of the Nominating and Corporate Governance Committee sets forth additional duties for its members, including developing and recommending to the Board corporate governance guidelines satisfying the standards established under the NYSE Listed Company Manual and periodically reviewing and reassessing the adequacy of the Corporate Governance Guidelines and Code of Conduct and recommending any changes to the Board for approval.

## V.    SUBSTANTIVE ALLEGATIONS

### A.    Background

38.    Doximity was founded in 2010 by Defendant Tangney and two other colleagues. The Company provides a professional platform for physicians to communicate, collaborate, and increase productivity through a set of online tools including scheduling and telehealth options.

39.    The Doximity platform is free to join and use for U.S. medical professionals.  The Company's revenue is generated by subscriptions from pharmaceutical manufacturers, health systems, medical recruiting firms, and certain other healthcare companies advertising their products and services on Doximity's platform. Subscribers can purchase several "modules" which are tailored to advertise to Doximity members in different ways.  For example, in catering to the various medical recruiting firms who sign on as customers, Doximity offers hiring services to its members in the form of job postings and direct messages to specific members regarding job opportunities. To service all manners of advertisers and a range of products and services, the Company's business is split into three segments: Marketing Solutions, Hiring Solutions, and Telehealth Solutions.

40.     The value to these advertisers from Doximity's platform hinges on the traffic on Doximity's site, with more Doximity members leading to greater visibility for the advertisements of their products and services. Indeed, with increased membership growth during the COVID-19 pandemic, Doximity's revenues swelled from $86 million reported in 2019 to more than $419 million reported in 2023.

41.     On June 24, 2021, the Company launched its Initial Public Offering ("IPO") on the NYSE, raising $7 billion.

**B.     Defendants Tangney And Spain Control Doximity**

42.     Defendant Tangney co-founded Doximity and has served as CEO and Chair of the Board since the Company's inception. According to Doximity's 2024 Proxy Statement filed with the SEC on July 18, 2024, Tangney controls 67% of Doximity's voting power giving him control over Doximity's management and affairs, and most matters requiring stockholder approval, including the election of directors, financing activities, a merger or sale of assets and other significant corporate transactions.  Defendant Spain represents Emergence Capital on the Board, which controls 9.7% of the Company's voting power as of April 1, 2024.[2]

43.     In every Annual Report filed by Doximity with the SEC since the Company's Annual Report on Form 10-K filed with the SEC on May 27, 2022, each of which was signed by at least a majority of the current Doximity Board, the Company's key person dependency on Tangney was disclosed: "Our ability to maintain our competitive position is largely dependent on the services of our senior management and other key personnel…. [T]he loss of any of our senior management or other key employees, *in particular our Chief Executive Officer*, or our inability to recruit and develop mid-level managers could materially and adversely affect our ability to execute our business plan and we may be unable to find adequate replacements."

**C.     The Company, Its Directors And Officers Mispresent The Company's Financial Condition**

44.     On February 9, 2022, Doximity filed a Current Report on Form 8-K and attached a press release announcing Doximity's financial results for the third quarter of 2022. In the press

---

[2] *See* the Company's Annual Reports filed with the SEC on Forms 10-K on May 27, 2022,  May 26, 2023, and May 23, 2024 ("[O]ur dual class common stock structure… provides certain affiliates of Jeff Tangney and Emergence Capital Partners, individually or together, with the ability to significantly influence the outcome of matters requiring stockholder approval, even if they own significantly less than a majority of the shares of our outstanding Class A common stock and Class B common stock.").

release, the Company reported revenue of $97.9 million and an adjusted EBITDA of $47 million, representing year-over-year growth of 67% and 119%, respectively.

45.     On a conference call with financial analysts and investors to discuss the third quarter financial results, Defendant Bryson touted that the Company was "seeing …sustained demand from our customers." Defendant Bryson stated that Doximity was focused on building up its business model to "provide years of sustainable growth with high margins."

46.     On May 17, 2022, Doximity filed with the SEC a Current Report on Form 8-K and attached a press release with the fourth quarter and full fiscal year 2022 financial results. In the press release, Doximity reported quarterly revenue of $93.7 million, and an adjusted EBITDA of $39.4 million, representing year-over-year growth of 40% and 47%, respectively, and full year revenue of $343.5 million and an adjusted EBTDA of $150.3 million for the full fiscal year, representing year-over-year growth of 66% and 132%, respectively. The Company also reported updated guidance for full year 2023, including revenue guidance of $454.0 million to $458.0 million, and adjusted EBTIDA guidance of $192.0 million to $196.0 million.

47.     On the same day, the Company held a conference call with financial analysts and investors to discuss the financial results. On the call, Defendant Bryson reiterated that the Company was "building a meaningful business of scale" with "sustainable long-term growth" and "attractive margins." Bryson further highlighted that Doximity demonstrated "a number of key strengths" which positioned it to drive "sustainable growth and profitability even in an uncertain market environment."

48.     On August 4, 2022, the Company filed with the SEC a Current Report on Form 8-K and attached a press release announcing the financial results for the first quarter of 2023. In the press release, the Company reported quarterly revenue of $90.6 million and an adjusted EBITDA of $33.5 million, representing year-over-year growth of 25% and 8%, respectively. Doximity also revised downward its full year 2023 guidance, to revenue guidance of $424 million to $432 million, representing year-over-year growth of 23.4% to 25.8%, and adjusted EBITDA guidance of $178 million to $186 million, representing year-over-year growth of 18.4% to 23.8%.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

49.     On a conference call with financial analysts and investors to discuss the financial results, Defendant Tangney noted some slowing in upsell rates but noted that "we believe this is transitory" and the Company's "higher growth will return." Defendant Bryson emphasized: "Historically, Q1 has always been our lightest quarter from a margin perspective, given annual raises, front-loaded hiring and team meetings, and we are seeing a return to that normal cadence in our financials" and pinned any slowing in growth on "the uncertain economic climate." Bryson stated that Doximity was facing "near-term challenges" and highlighted that the Company was "uniquely positioned to drive strong returns as a marketing partner for the long term."

50.     On the next day, the Company filed with the SEC its Quarterly Report on Form 10-Q, which was signed by Defendants Tangney and Bryson and represented that certain of the trends "underlying our positive performance…have been accelerated and will persist long after the pandemic ends."

51.     On November 10, 2022, the Company filed with the SEC a Current Report on Form 8-K and attached a press release announcing the financial results for the second quarter of 2023. In the press release, the Company reported quarterly revenue of $102.2 million and an adjusted EBITDA of $46 million, representing year-over-year growth of 29% and 40%, respectively. Doximity also reiterated its full year 2023 revenue and adjusted EBITDA guidance.

52.     On the same day, the Company filed with the SEC its Quarterly Report on Form 10-Q, which was signed by Defendants Tangney and Bryson and represented that certain of the trends "underlying our positive performance…have been accelerated and will persist long after the pandemic ends."

53.     On a conference call with financial analysts and investors to discuss the financial results, CEO Tangney stated that concerns that "pharma digital marketing" would return to "pre-pandemic" levels were "overblown." Tangney represented that the Company's long-term growth and market position was secure, even in a difficult economic environment, based on the Company's

"increased reach and personalization" with at least "7 years of 20-plus percent growth" in the Company's future:

> Especially in leaner times, pharma is incredibly measured and disciplined about ROI. Generally, they strive for a 3:1 return on their marketing dollar, and they will continue to invest at that level. Some digital solutions will cut the mustard and some won't, which lead me to perhaps the best out of this call. For third-party studies completed over the last 6 months, our median pharma ROI has improved to over 15:1. That's well above the 10:1 we cited last year in our S-1.
>
> ***This is for a host of good reasons, including our increased reach and personalization.*** Our all-time pharma median ROI now stands at 11:1 . . . An 11:1 ROI implies that all else equal, if we theoretically did nothing but raise prices, then ***we would have 7 years of 20-plus percent growth ahead of us*** before our ROI falls to 3:1. That's the baseline aperture through which we view our long-term growth rate as we've obviously many, many other vectors to grow beyond price.

54.     Defendant Bryson confirmed that Doximity was in the "early innings of a large and growing market opportunity, aided by a secular shift to digital," and "uniquely advantaged to gain market share as these budgets continue to shift to digital over the next decade." Bryson discussed the Company's upselling efforts in marketing, with the "majority" of revenue coming from "core renewals" in any "given fiscal year" and noted that upsells were not a "significant portion of our revenue."

55.     CFO Bryson also highlighted Doximity's robust business pipeline which "is one of the good things about this year" and that the Company was pulling in "bigger dollar deals than we've seen before." Bryon concluded that the Company was "incredibly optimistic and positive on what we're going to see" regarding an opportunity "to cross-sell and upsell in this renewal cycle."

56.     On February 9, 2023, the Company filed with the SEC a Current Report on Form 8-K and attached a press release announcing the third quarter results for fiscal 2023. In the press release, Doximity issued preliminary financial guidance for fiscal 2024, including revenue of over $500 million, representing 19% year-over-year growth, and a minimum adjusted EBITDA margin of 43%.

57.     On the same day, Doximity filed with the SEC its Quarterly Report on Form 10-Q, which was signed by Defendants Tangney and Bryson, and represented that certain of the trends

- 16 -
VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

"underlying our positive performance...have been accelerated and will persist long after the pandemic ends."

58.     On a conference call with financial analysts and investors that day, Defendant Bryson stated that the Company would likely hit a "similar percentage of midyear upsell to what we saw in fiscal 2023" or half "our historical upsell rate." Bryson expected stronger financial results from outperformance on upselling, representing that the Company's guidance was "conservative" and that Doximity was "less dependent on major upsell" than previous years and more focused on the "core annual renewal cycle," which was continuing to "perform really well" and "incredibly strong."

59.     On May 16, 2023, the Company filed with the SEC a Current Report on Form 8-K and attached a press release announcing the fourth quarter and full year results for fiscal 2023. In the press release, Doximity reported full year revenue of $419.1 million and an adjusted EBITDA of $184 million, representing 22% year-over-year growth overall.  The Company also *increased* its financial guidance for fiscal 2024 to revenue of $500 million to $506 million, representing year-over-year growth of 19.3% to 20.7%, and adjusted EBITDA of $216 million to $222 million, representing year-over-year growth of 17.4% to 20.7%.

60.     On the same day, on a conference call with financial analysts and investors to discuss the financial results, Defendant Bryson reported that "subscription revenue, which comprised 93% of our total revenue" accelerated to 20% growth in the fourth quarter and noted that while the "macro environment" remained uncertain, the Company was encouraged by the "positive momentum" in its "core marketing business." Bryson also reported that "over 65%" of "subscription-based revenue guidance" was under contract and Doximity expected "another 30% to come from renewals and upsells" and the last 5% from "new customers." Bryson reiterated that the Company was modeling a "similar percentage of midyear upsell to last year which is about half of our historical rate." Defendant Tangney downplayed the importance of upsells to the Company's business model, stating that the Company was prepared for "low upsells."

61.     On June 6, 2023, at an Investor Day Conference, Bryson highlighted Doximity's "significant potential for future growth" through upsells to existing customers and noted that a number of factors, including the "new budgets we're unlocking in customers that we already have deep relationships," positioned the Company to achieve "$1 billion-plus targets in fiscal 2028."

### D.     Doximity Slashes Its 2024 Financial Guidance

62.     On August 8, 2023, Doximity filed with the SEC a Current Report on Form 8-K and attached a press release announcing its financial results for the first quarter of fiscal 2024. In the press release, Doximity slashed its guidance for the full fiscal year 2024 to revenue of $452 million to $468 million, representing only 7.9% to 11.7% growth, versus the revenue guidance provided only three months earlier of $500 million to $506 million, an 8.3% to 11.4% decline in growth. Doximity also slashed its adjusted EBITDA guidance for fiscal 2024 of $193 million to $209 million, representing 4.9% to 13.6% growth, versus the guidance issued only three months earlier of $216 million to $222 million, a 7.1% to 12.5% decline in growth.

63.     On a conference call with financial analysts and investors the same day, Defendant Tangney pinned the slashed guidance on a slowing upsell rate which "fell short in June and July" and admitted that "after growing steadily for a decade," upsells had slowed *"for 2 years in a row."* Tangney also acknowledged that the overall headwinds in the pharmaceutical industry were not "overblown" as he had represented on the November 10, 2022 call but were representative of a general slowing in the "shift to digital," which translated into Doximity's digital pharma growing "at half the low-teens growth rate that we and eMarketer predicted last year."

64.     CEO Tangney noted that the Company had failed in a critical piece of its upsell strategy, face-to-face interaction with clients, which led to the slower upsell rate and a failure to capture the "incremental spend" from pharmaceutical advertisers who turned to other forms of advertising. Defendant Bryson cautioned that the "material underperformance" in the Company's upsells would likely "continue in the near term," with rates continuing to decline and impacting second quarter results. Bryson commented that 35% of the financial guidance was expected from

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

upsells, renewals, and new customers, which had "become increasingly difficult to predict." Bryson emphasized that the "weakness really is in our mid-tier upsells" with a decline "on an absolute dollar basis.

65.     Defendant Tangney announced a 10% reduction in Doximity's workforce due to the Company's financial reverse, at a cost of $8 million to $10 million for severance, stock-vesting, career services, and extended health care coverage, with the most significant cuts in the "operations and client service teams where live client visits, printing and manual HML edits are just less needed than in the past."

66.     On the heels of the announcements of the reduced guidance, slowing upsell rate, and workforce reduction and the substantial costs thereof, the Company's stock plummeted 23% from a close of $32.79 per share on August 8, 2023, to close at $25.30 per share on August 9, 2023.

67.     On August 9, 2023, Needham and Company downgraded Doximity's stock to Hold from Buy until demand for the stock was "more predictable," Morgan Stanley cut its price target for the stock from $28 to $21 per share, and Raymond James lowered its price target from $40 to $30 per share. Guggenheim Partners downgraded the stock to Neutral from Buy based on the lack of a compelling case to "buy the dip" and expected pressure on the share price resulting from the "credibility discount."

68.     On August 24, 2023, *Seeking Alpha* downgraded Doximity's stock rating to Hold from Buy due to near-term performance concerns.

69.     On July 18, 2024, Wells Fargo downgraded Doximity to Underweight from Equal Weight and reduced its price target from $27.00 per share to $19.00 per share due to concerns over the Company's growth trajectory, particularly within the Biopharma sector, its primary revenue source. According to the Wells Fargo report, the downgrade stemmed from a survey of the Company which indicated that expectations for 9% top-line growth by fiscal year 2026 were overly optimistic, with a likely increase of only 6%.

70.     On April 1, 2024, Jehoshaphat Research issued a report on Doximity. The Jehoshaphat Report stated that Doximity's underlying sales were declining at a negative "3-6% rate but that this decline has been masked through accelerated revenue recognition" and the Company's revenue growth was not sustainable, durable growth, but merely "driven by pulling forward revenues from the future." The Report noted that the Company had stopped producing real revenue since 2022 and had actually experienced revenue declines in the previous quarters.

**E.      Doximity Is Sued In Securities Class Action Lawsuits**

71.     On April 17, 2024, securities class action lawsuits began to be filed against the Company, CEO Tangney, and CFO Bryson in this Court, alleging violations of Section 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), Rule 10b-5 promulgated thereunder by the SEC, and Section 20(a) of the Exchange Act.

72.     On July 3, 2024, the securities class actions were consolidated under the caption *In re Doximity, Inc. Securities Litigation*, Master File No. 5:24-cv-02281-JST (the "Securities Class Action").[3]  The lawsuit seeks damages on behalf of a class consisting of all persons and entities that purchased or otherwise acquired Doximity securities between February 9, 2022, and April 1, 2024, inclusive. The lawsuit alleges that the named defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts, about the Company's financial condition, business, and operations. Specifically, the named defendants repeatedly touted the Company's business prospects and the sustainability of the Company's revenue growth and profitability, while downplaying the impact of competition and tightening macroeconomic conditions on the Company and Doximity's reliance on "upselling" products and services (such as additional advertising) to existing customers to sustain the Company's performance and future growth.

**F.      The Insider Seller Defendants Profit From The Misconduct**

73.     From February 11, 2022 through April 1, 2024, Defendants Cabral, Bryson, Wampler and Benjamin (the "Insider Seller Defendants") sold substantial amounts of their Doximity

---

[3] On August 20, 2024, the case was reassigned to Judge Eumi K. Lee.

shareholdings while in possession of material non-public information, collectively selling more than

116,014 Doximity shares, and reaping nearly $4.4 million in illegal proceeds:

- Defendant Cabral sold 57,214 Doximity shares, reaping proceeds of approximately $1,935,757 million:

| Date | Number of Shares | Avg. Price/Share | Proceeds |
|---|---|---|---|
| 2/14/2023 | 10,000 | $32.55 | $325,460 |
| 2/15/2023 | 7,500 | $35.00 | $262,500 |
| 4/3/2023 | 10,000 | $32.00 | $319,960 |
| 4/11/2023 | 7,500 | $35.00 | $262,500 |
| 7/3/2023 | 10,000 | $33.80 | $338,050 |
| 7/12/2023 | 7,500 | $35.00 | $262,500 |
| 7/28/2023 | 4,714 | $34.96 | $164,787 |

- Defendant Bryson sold 25,000 Doximity shares, reaping proceeds of approximately $1 million:

| Date | Number of Shares | Avg. Price/Share | Proceeds |
|---|---|---|---|
| 2/2/2023 | 25,000 | $40.00 | $1,000,000 |

- Defendant Wampler sold 23,800 Doximity shares, reaping proceeds of $877,371:

| Date | Number of Shares | Avg. Price/Share | Proceeds |
|---|---|---|---|
| 2/11/2022 | 2,200 | $58.69 | $129,107 |
| 3/1/2022 | 2,200 | $60.73 | $133,614 |
| 4/1/2022 | 2,200 | $53.34 | $116,830 |
| 5/2/2022 | 2,200 | $40.09 | $87,730 |
| 12/14/2023 | 2,500 | $26.00 | $65,000 |
| 12/15/2023 | 2,500 | $26.65 | $66,630 |
| 1/2/2024 | 5,000 | $28.26 | $141,330 |
| 3/1/2024 | 2,500 | $27.88 | $69,700 |
| 4/1/2024 | 2,500 | $26.97 | $67,430 |

- Defendant Benjamin sold 10,000 Doximity shares, reaping proceeds of approximately $586,820.

| Date | Number of Shares | Avg. Price/Share | Proceeds |
|---|---|---|---|
| 2/11/2022 | 10,000 | $58.68 | $586,820 |

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

**G.      The Individual Defendants Cause Doximity To Repurchase More Than Three Million Of Its Shares At Inflated Prices**

74.      The Individual Defendants breached their fiduciary duties by causing Doximity to repurchase its own stock at prices that were artificially inflated due to the misrepresentations alleged herein. Between June 2022 and July 2023, approximately 3,398,998 shares of Doximity common stock were repurchased for $109.1 million.

75.      In the Company's Quarterly Report on Form 10-Q filed with the SEC on August 5, 2022 for the period ended June 30, 2022, it is disclosed that, between June 1, 2022 and June 30, 2022, the Company purchased 273,746 Class shares for approximately $8,869,370 million at an average price of $32.40 per share.

76.      In the Company's Quarterly Report on Form 10-Q filed with the SEC on November 10, 2022 for the period ended September 30, 2022, it is disclosed that between August 1, 2022 and August 31, 2022, the Company purchased 1,160,157 Class A shares for approximately $37,971,938 at an average price of $32.73 per share, and that, between September 1, 2022 and September 30, 2022, the Company purchased 717,079 Class A shares for approximately $23,161,651 at an average price of $32.30 per share.

77.      In the Company's Annual Report on Form 10-K filed with the SEC on May 26, 2023, it is disclosed that, between March 1, 2023 and March 31, 2023, the Company purchased 523,647 Class A shares for approximately $16,018,361 at an average price of $30.59 per share.

78.      In the Company's Quarterly Report on Form 10-Q filed with the SEC on August 8, 2023, for the period ended June 30, 2023, it is disclosed that between April 1, 2023 and April 30, 2023, the Company purchased 123,086 Class A shares  for approximately $3,925,212 at an average price of $31.89 per share; that between May 1, 2023 and May 31, 2023, the Company purchased 259,753 Class A shares for approximately $8,201,374 at an average price of $31.62 per share; and that,  between  June 1, 2023 and June 30, 2023, the Company purchased  281,115 Class A shares for approximately $8,967,568 at an average price of $31.90 per share.

79.     In the Company's Quarterly Report filed with the SEC on November 9, 2023, for the period ended September 30, 2023, it is disclosed that, between July 1, 2023 and July 31, 2023, the Company purchased 60,795 Class A shares for approximately $1,985,564 at an average price of $32.66 per share.

**H.     Doximity's False And Misleading Proxy Statements**

80.     On June 15, 2022, the Company filed its 2022 Proxy Statement with the SEC soliciting shareholder votes to, among other things, re-elect Defendants Tangney and Wampler to the Board. The Proxy Statement was issued by order of the Board and signed by Defendant Tangney.

81.     The 2022 Proxy Statement represents that the Board oversees and monitors the Company's risk exposures:

> Our board has responsibility for the oversight of our risk management processes and, either as a whole or through its committees, regularly discusses with management our major risk exposures, their potential impact on our business and the steps we take to manage them. The risk oversight process includes receiving regular reports from board committees and members of senior management to enable our board to understand our risk identification, risk management, and risk mitigation strategies with respect to areas of potential material risk, including operations, finance, legal, regulatory, cybersecurity, strategic, and reputational risk.

> Our board believes that open communication between our management team and our board is essential to management and oversight. Our board meets with our Chief Executive Officer and other members of the senior management team at quarterly meetings of our board, as well as at such other times as they deem appropriate, where, among other topics, they discuss major risk exposures, their potential impact on our business and steps we take to manage them.

82.     The 2022 Proxy Statement represents that the Audit Committee is engaged in vigorous oversight over risks to the Company, the adequacy of the Company's internal controls, and compliance with all legal requirements: "[O]ur audit committee assists our board in fulfilling its oversight responsibilities with respect to risk assessment and risk management in the areas of internal control over financial reporting, disclosure controls and procedures, legal and regulatory compliance, liquidity risk, enterprise risk management and cybersecurity."

83.     The 2022 Proxy Statement represents that the Nominating and Corporate Governance Committee "assists our board in fulfilling its oversight responsibilities with respect to the

management of risk associated with our board's organization, membership, structure, corporate

governance and…governance initiatives."

84.    The 2022 Proxy Statement represents that Doximity and its Board are committed to

robust corporate governance practices:

> Our board and management team are committed to good corporate governance to
> ensure that we are managed for the long-term benefit of our stockholders, and we have
> a variety of policies and procedures to promote such goals. To that end, during the
> past year, our management periodically reviewed our corporate governance policies
> and practices to ensure that they remain consistent with the requirements of the
> Sarbanes-Oxley Act of 2002 (the "Sarbanes-Oxley Act"), SEC rules and NYSE Listed
> Company Manual standards.

85.    The foregoing statements in the 2022 Proxy Statement were false and misleading and

omitted material information.  Contrary to the representations made in the Proxy Statement, the Board

was required, but failed to: (1) implement and maintain an effective system of internal controls to

ensure that the Company was complying with all laws, rules, and regulations governing Doximity's

core operations and making truthful, accurate, and complete statements regarding its core operations,

financial condition, and business prospects; (2) effectively oversee and monitor the material risks

facing the Company; and (3) investigate and take action when presented with red flags regarding

misconduct or the lack of internal controls.

86.    On July 29, 2022, Doximity filed with the SEC a Current Report on Form 8-K

announcing, among other things, the re-election of Defendants Tangney and Wampler to the Board

pursuant to the solicitation in the 2022 Proxy Statement.

87.    On June 14, 2023, the Company filed its 2023 Proxy Statement with the SEC soliciting

shareholder votes to, among other things, re-elect Defendants Spain and Cabral to the Board. The

2023 Proxy Statement was issued by order of the Board and signed by Defendant Tangney.

88.    The 2023 Proxy Statement contained similar false and misleading statements and

omissions as the 2022 Proxy Statement regarding the Board's oversight and monitoring of the

Company's risk exposures, the robust oversight of Doximity's Board-level committees, and

Doximity's commitment to good corporate governance practices.

89.     On July 28, 2023, Doximity filed with the SEC a Current Report on Form 8-K announcing, among other things, the re-election of Defendants Spain and Carbal to the Board pursuant to the solicitation in the 2023 Proxy Statement.

90.     On July 18, 2024, the Company filed its 2024 Proxy Statement with the SEC soliciting shareholder votes to, among other things, re-elect Defendants Benjamin and Yang to the Board and approve executive compensation. The Proxy Statement was issued by order of the Board and signed by Defendant Tangney.

91.     The 2024 Proxy Statement contained similar false and misleading statements and omissions as the 2022 Proxy Statement and 2023 Proxy Statement regarding the Board's oversight and monitoring of the Company's risk exposures, the robust oversight of Doximity's Board-level committees, and Doximity's commitment to good corporate governance practices.

92.     On August 30, 2024, Doximity filed with the SEC a Current Report on Form 8-K announcing, among other things, the re-election of Defendants Benjamin and Yang to the Board and the approval of the executive compensation pursuant to the solicitations in the 2024 Proxy Statement.

## VI.     DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

93.     Plaintiff brings this action derivatively and for the benefit of Doximity to redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and officers of Doximity and other misconduct.

94.     Doximity is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

95.     Plaintiff is, and has been at all relevant times, a stockholder of Doximity and was a stockholder of the Company at the time of the misconduct alleged herein. Plaintiff will adequately and fairly represent the interests of Doximity in enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to prosecute this action.

96.     Demand upon the Board to institute this action against the Individual Defendants would be futile and is, therefore, excused.  The Board is neither disinterested nor independent.

**A.    Demand Upon Defendant Tangney Is Excused**

97.    Defendant Tangney is the CEO and Co-founder of Doximity and Chair of the Board since the Company's inception. Tangney therefore is not independent. As an employee of Doximity, the Company provides Defendant Tangney with his principal occupation from which he receives substantial compensation. In 2022, 2023, and 2024, Defendant Tangney received total compensation packages of $240,000, $240,000, $295,000 respectively. Indeed, Doximity's 2024 Proxy Statement does not list Tangney as an independent director.

98.    As Doximity 2024 Proxy Statement states, Defendant Tangney controls 67% of the voting power of the Company as of April 1, 2024.  His significant ownership enables him to control Doximity's management and affairs, and most matters requiring stockholder approval, including the election of directors, financing activities, a merger or sale of our assets and other significant corporate transactions.  Moreover, the Company has a key person dependency on Defendant Tangney that further tightens his grip on the Company, its directors and officers. As such none of the other members of the Doximity Board would take action against Defendant Tangney since it would jeopardize their continuation in their lucrative positions at Doximity.

99.    Tangney is named as a defendant in the pending Securities Class Action. As such, he is incapable of considering a demand to commence and vigorously prosecute this action with the required independence and disinterest.

100.    Tangney signed the 2022, 2023, and 2024 Proxy Statements containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

101.    Tangney benefitted from the violation of Section 14(a) of the Exchange Act pled herein by securing re-election to the Doximity Board through the false and misleading statements and material omissions in the 2022 Proxy Statement.

102.    Tangney and Spain have a long-standing personal and business relationship which prevents them from acting in an independent and disinterested manner.  Since 2011, Spain has served as a general partner of Emergence Capital and served as a principal of Emergence Capital from

**VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT**

September 2006 to March 2011. Spain, through his work at Emergence Capital, supported Doximity and Tangney, by funding a $10.8 million Series A capital investment in the Company along with others in March 2011, Doximity's first investment.[4]  Not yet a partner at Emergence Capital, Spain put his reputation on the line by convincing his superiors to invest in Doximity, a pre-revenue business and an atypical bet for Emergence Capital, which focuses on early-stage cloud software companies.

103.    Tangney, as a director of Doximity, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Doximity's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

104.    Tangney is neither independent nor disinterested.  Any demand upon Defendant Tangney is futile and, thus, excused.

**B.    Demand Upon Defendant Benjamin Is Excused**

105.    Defendant Benjamin had a powerful incentive to inflate Doximity's stock price through false and misleading financial information in order to profit from insider sales. Defendant Benjamin sold 10,000 Doximity shares while in possession of material adverse non-public information, reaping proceeds of $586,820. Thus, through the material misrepresentations and omissions regarding Doximity's financial condition, Benjamin reaped a material personal benefit not shared with other Doximity stockholders from the misconduct pled herein.

106.    Benjamin authorized the 2022, 2023, and 2024 Proxy Statements containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

---

[4] https://www.businesswire.com/news/home/20110316006074/en/Doximity-Secures-Major-Venture-Capital-Investment.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

107.    Benjamin benefitted from the violation of Section 14(a) of the Exchange Act pled herein by securing re-election to the Doximity Board through the false and misleading statements and material omissions in the 2024 Proxy Statement.

108.    As Doximity's 2024 Proxy Statement states, Defendant Tangney controls 67% of the voting power of the Company as of April 1, 2024. Moreover, the Company has a key person dependency on Defendant Tangney that further tightens his grip on the Company, its directors and officers.  As such, Defendant Benjamin will not act against Defendant Tangney given his position as a controlling shareholder which enables him to control Doximity's management and affairs, and most matters requiring stockholder approval, including the election of directors, financing activities, a merger or sale of our assets and other significant corporate transactions.

109.    As Doximity's 2024 Proxy Statement states, Defendant Spain, through his position as a general partner of Emergence Capital, controls nearly 10% of the voting power of the Company as of April 1, 2024. As such, Defendant Benjamin will not act against Defendant Spain given his position as a controlling shareholder which enables him to control Doximity's management and affairs, and most matters requiring stockholder approval, including the election of directors, financing activities, a merger or sale of our assets and other significant corporate transactions.

110.    Benjamin, as a member of the Audit Committee, had duties regarding oversight of the risks facing the Company and Doximity's compliance with relevant laws, rules, and regulations. Benjamin utterly failed to perform these essential duties.

111.    Benjamin, as a member of the Nominating and Corporate Governance Committee had the duty, among others, to ensure the implementation and effectiveness of Doximity's Code of Conduct and Corporate Governance Guidelines. Benjamin utterly failed to perform these duties.

112.    Benjamin, as a director of Doximity, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Doximity's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2)

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

113.    Benjamin is neither independent nor disinterested.   Any demand upon Defendant Benjamin is futile and, thus, excused.

### C.    Demand Upon Defendant Cabral Is Excused

114.    Defendant Cabral had a powerful incentive to inflate Doximity's stock price through false and misleading financial information in order to profit from insider sales. Defendant Cabral sold 57,214 Doximity shares while in possession of material adverse non-public information, reaping proceeds of $1,935,757. Thus, through the material misrepresentations and omissions regarding Doximity's financial condition, Cabral reaped a material personal benefit not shared with other Doximity stockholders from the misconduct pled herein.

115.    Cabral authorized the 2022, 2023, and 2024 Proxy Statements containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

116.    Cabral benefitted from the violation of Section 14(a) of the Exchange Act pled herein by securing re-election to the Doximity Board through the false and misleading statements and material omissions in the 2023 Proxy Statement.

117.    As Doximity's 2024 Proxy Statement states, Defendant Tangney controls 67% of the voting power of the Company as of April 1, 2024. Moreover, the Company has a key person dependency on Defendant Tangney that further tightens his grip on the Company, its directors and officers.  As such, Defendant Cabral will not act against Defendant Tangney given his position as a controlling shareholder which enables him to control Doximity's management and affairs, and most matters requiring stockholder approval, including the election of directors, financing activities, a merger or sale of our assets and other significant corporate transactions.

118.    As Doximity's 2024 Proxy Statement states, Defendant Spain, through his position as a general partner of Emergence Capital, controls nearly 10% of the voting power of the Company as of April 1, 2024. As such, Defendant Cabral will not act against Defendant Spain given his position

as a controlling shareholder which enables him to control Doximity's management and affairs, and most matters requiring stockholder approval, including the election of directors, financing activities, a merger or sale of our assets and other significant corporate transactions.

119.    Cabral, as Chair of the Audit Committee, had duties regarding oversight of the risks facing the Company and Doximity's compliance with relevant laws, rules, and regulations. Cabral utterly failed to perform these essential duties.

120.    Cabral, as a director of Doximity, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Doximity's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

121.    Cabral is neither independent nor disinterested.  Any demand upon Defendant Cabral is futile and, thus, excused.

**D.    Demand Upon Defendant Spain Is Excused**

122.    Spain authorized the 2022, 2023, and 2024 Proxy Statements containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

123.    Spain benefitted from the violation of Section 14(a) of the Exchange Act pled herein by securing re-election to the Doximity Board through the false and misleading statements and material omissions in the 2023 Proxy Statement.

124.    As Doximity's 2024 Proxy Statement states, Defendant Tangney controls 67% of the voting power of the Company as of April 1, 2024. Moreover, the Company has a key person dependency on Defendant Tangney that further tightens his grip on the Company, its directors and officers.   As such, Defendant Spain will not act against Defendant Tangney given his position as a controlling shareholder which enables him to control Doximity's management and affairs, and most

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

matters requiring stockholder approval, including the election of directors, financing activities, a merger or sale of our assets and other significant corporate transactions.

125.    Spain and Tangney have a long-standing personal and business relationship which prevents them from acting in an independent and disinterested manner.  Since 2011, Spain has served as a general partner of Emergence Capital Partners, a venture capital firm, and served as a principal of Emergence Capital from September 2006 to March 2011.  Spain, through his work as a partner at Emergence Capital, supported Doximity and Tangney, by funding a $10.8 million Series A capital investment in the Company along with others in March 2011, Doximity's first investment. Not yet a partner at Emergence Capital, Spain put his reputation on the line by convincing his superiors to invest in Doximity, a pre-revenue business and an atypical bet for Emergence Capital, which focuses on early-stage cloud software companies.

126.    According to Doximity's 2024 Proxy Statement, through his position as a general partner of Emergence Capital, Spain controls nearly 10% of the Company's voting power as of April 1, 2024.  As a controlling shareholder, Spain enables controls Doximity's management and affairs, and most matters requiring stockholder approval, including the election of directors, financing activities, a merger or sale of our assets and other significant corporate transactions.

127.    Spain, as a member of the Audit Committee, had duties regarding oversight of the risks facing the Company and Doximity's compliance with relevant laws, rules, and regulations. Spain utterly failed to perform these essential duties.

128.    Spain, as a director of Doximity, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Doximity's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

129.     Spain is neither independent nor disinterested.  Any demand upon Defendant Spain is futile and, thus, excused.

**E.     Demand Upon Defendant Wampler Is Excused**

130.     Defendant Wampler had a powerful incentive to inflate Doximity's stock price through false and misleading financial information to profit from insider sales. Defendant Wampler sold 23,800 Doximity shares while in possession of material adverse non-public information, reaping proceeds of $877,371. Thus, through the material misrepresentations and omissions regarding Doximity's financial condition, Wampler reaped a material personal benefit not shared with other Doximity stockholders from the misconduct pled herein.

131.     Wampler authorized the 2022, 2023, and 2024 Proxy Statements containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

132.     Wampler benefitted from the violation of Section 14(a) of the Exchange Act pled herein by securing re-election to the Doximity Board through the false and misleading statements and material omissions in the 2022 Proxy Statement.

133.     As Doximity's 2024 Proxy Statement states, Defendant Tangney controls 67% of the voting power of the Company as of April 1, 2024. Moreover, the Company has a key person dependency on Defendant Tangney that further tightens his grip on the Company, its directors and officers.  As such, Defendant Wampler will not act against Defendant Tangney given his position as a controlling shareholder which enables him to control Doximity's management and affairs, and most matters requiring stockholder approval, including the election of directors, financing activities, a merger or sale of our assets and other significant corporate transactions.

134.     As Doximity's 2024 Proxy Statement states, Defendant Spain, through his position as a general partner of Emergence Capital, controls nearly 10% of the voting power of the Company as of April 1, 2024. As such, Defendant Wampler will not act against Defendant Spain given his position as a controlling shareholder which enables him to control Doximity's management and affairs, and

most matters requiring stockholder approval, including the election of directors, financing activities, a merger or sale of our assets and other significant corporate transactions.

135.    Wampler, as Chair of the Nominating and Corporate Governance Committee had the duty, among others, to ensure the implementation and effectiveness of Doximity's Code of Conduct and Corporate Governance Guidelines. Wampler utterly failed to perform these duties.

136.    Wampler, as a director of Doximity, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Doximity's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

137.    Wampler is neither independent nor disinterested.  Any demand upon Defendant Wampler is futile and, thus, excused.

**F.    Demand Upon Defendant Yang Is Excused**

138.    Yang authorized the 2023 and 2024 Proxy Statements containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

139.    Yang benefitted from the violation of Section 14(a) of the Exchange Act pled herein by securing re-election to the Doximity Board through the false and misleading statements and material omissions in the 2024 Proxy Statement.

140.    As Doximity's 2024 Proxy Statement states, Defendant Tangney controls 67% of the voting power of the Company as of April 1, 2024. Moreover, the Company has a key person dependency on Defendant Tangney that further tightens his grip on the Company, its directors and officers.  As such, Defendant Yang will not act against Defendant Tangney given his position as a controlling shareholder which enables him to control Doximity's management and affairs, and most matters requiring stockholder approval, including the election of directors, financing activities, a merger or sale of our assets and other significant corporate transactions.

141.    As Doximity's 2024 Proxy Statement states, Defendant Spain, through his position as a general partner of Emergence Capital, controls nearly 10% of the voting power of the Company as of April 1, 2024. As such, Defendant Yang will not act against Defendant Spain given his position as a controlling shareholder which enables him to control Doximity's management and affairs, and most matters requiring stockholder approval, including the election of directors, financing activities, a merger or sale of our assets and other significant corporate transactions.

142.    Yang, as a member of the Nominating and Corporate Governance Committee had the duty, among others, to ensure the implementation and effectiveness of Doximity's Code of Conduct and Corporate Governance Guidelines. Yang utterly failed to perform these duties.

143.    Yang, as a director of Doximity, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Doximity's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

144.    Yang is neither independent nor disinterested.  Any demand upon Defendant Yang is futile and, thus, excused.

G.    **Other Factors Demonstrating That Demand Upon The Doximity Board Is Excused**

145.    Doximity has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Board has not caused the Company to take action to recover for the Company the damages it has suffered and will continue to suffer thereby.

146.    The members of the Doximity Board received, and continue to receive, substantial salaries, bonuses, payments, benefits, and other emoluments by virtue of their membership on the Board.  They have thus benefited from the wrongs herein alleged and have engaged therein to preserve their positions of control and the perquisites thereof and are incapable of exercising independent objective judgment in deciding whether to bring this action.

147.    Publicly traded companies, such as Doximity, typically carry director and officer liability insurance from which the Company could potentially recover some or all of its losses. However, such insurance typically contains an "insured vs. insured" disclaimer that will foreclose a recovery from the insurers if the Individual Defendants sue each other to recover Doximity's damages.

## VII.    CLAIMS FOR RELIEF

<u>COUNT ONE</u>
**Against the Individual Defendants for
Violations of Section 14(A) of the Exchange Act**

148.    Plaintiff incorporates by reference and realleges each and every allegation set forth above as if fully set forth herein.

149.    The Section 14(a) claim alleged herein is based solely on negligence.  It is not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants. Section 14(a) claim alleged herein does not allege and does not sound in fraud.  Plaintiff specifically disclaims any allegations of reliance upon any allegation of, or reference to, any allegation of fraud, scienter, or recklessness with regard to those non-fraud claims.

150.    Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

151.    Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

- 35 -

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

152.     Under the direction of the Individual Defendants, the 2022, 2023, and 2024 Proxy Statements failed to disclose that the Individual Defendants each violated their fiduciary duties to Doximity and its stockholders by, among other things, failing to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Doximity's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.  Further, the 2022, 2023, and 2024 Proxy Statements contained false and misleading statements related to risk and corporate governance oversight by the Board and its Committees.

153.     In the exercise of reasonable care, the Individual Defendants should have known that by misrepresenting or failing to disclose the foregoing material facts, the statements contained in the 2022, 2023, and 2024 Proxy Statements were materially false and misleading and omitted material information.

154.     The false and misleading statements in, and information omitted from, the 2022, 2023, and 2024 Proxy Statements was material to Doximity's shareholders in determining whether to, among other things, elect Defendants Tangney, Wampler, Spain, Cabral, Benjamin and Yang to the Board and approve executive compensation.

155.     The material misstatements and omissions in the 2022, 2023, and 2024 Proxy Statements damaged the Company.

156.     Plaintiff, on behalf of Doximity, seeks relief for damages inflicted upon the Company based on the misleading 2022, 2023, and 2024 Proxy Statements in connection with the improper election of Defendants Tangney, Wampler, Spain, Cabral, Benjamin, and Yang and the approval of executive compensation.

## COUNT TWO
### Against the Individual Defendants
### for Breach of Fiduciary Duties

157.    Plaintiff incorporates by reference and realleges each allegation contained above, as though fully set forth herein.

158.    The Individual Defendants owed and owe fiduciary duties to Doximity.  By reason of their fiduciary relationships, the Individual Defendants specifically owed and owe Doximity the highest obligation of good faith and loyalty in the administration of Doximity's affairs.  The Board also had specific fiduciary duties as defined by the Company's corporate governance documents and principles that, had they been discharged in accordance with the Board's obligations, would have prevented the misconduct and consequential harm to Doximity alleged herein.

159.    The Individual Defendants ignored their obligations under state and federal law.  The Individual Defendants failed to make a good faith effort to correct the problems or prevent their recurrence.

160.    The Individual Defendants each violated their fiduciary duties to Doximity and its stockholders by, among other things, failing to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Doximity's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.  As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Doximity has sustained and continues to sustain significant damages and its reputation has been irreparably damaged.

161.    The Individual Defendants further breached their fiduciary duties to Doximity by, *inter alia*, making or allowing the dissemination of false and misleading statements and material omissions in public statements and regulatory filings.

162.    As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Doximity has sustained significant damages, not only monetarily, but also to

its corporate image and goodwill. Such damages include, among other things, the costs of defending and resolving the pending Securities Class Action.

163.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

**COUNT THREE**
**Against the Individual Defendants for**
**Contribution for Violations of 21D of the Exchange Act**

164.     The conduct of the Individual Defendants, as described herein, has exposed the Company to significant liability under various federal securities laws by their misconduct.

165.     Doximity is named as a defendant in a related Securities Class Action that alleges and asserts claims arising under the federal securities laws.  The Company is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein.  If Doximity is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of all or some of the Individual Defendants as alleged herein, who have caused the Company to suffer substantial harm through their misconduct.  The Company is entitled to contribution and indemnification from the Individual Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

166.     As officers and directors, the Individual Defendants had the power or ability to, and did, control or influence, either directly or indirectly, Doximity's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated the federal securities laws.

167.     The Individual Defendants are liable under §21D of the Exchange Act, which governs the application of any private right of action for contribution asserted pursuant to the federal securities laws.

168.     The Individual Defendants have damaged the Company and are liable to the Company for contribution.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

**COUNT FOUR**
**Against the Individual Defendants**
**for Aiding and Abetting**

169. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

170. Each of the Individual Defendants has acted and is acting with knowledge of or with reckless, or grossly negligent, disregard to the fact that the Individual Defendants are in breach of their duties to the Company and have participated in such breaches of duties.

171. In committing the wrongful acts, each of the Individual Defendants has pursued or joined in the pursuit of a common course of conduct. They have acted in concert with and conspired with one another in furtherance of their common plan or design. In addition to pursuing the wrongful conduct that gives rise to their primary liability, the Individual Defendants also aided and abetted, and/or assisted, each other in breaching their respective duties.

172. Because the actions described herein occurred under the Board's supervision and authority, each of the Individual Defendants played a direct, necessary, and substantial part in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

173. Each of the Individual Defendants aided and abetted each other and rendered substantial assistance in the wrongs complained of herein.

**COUNT FIVE**
**Derivative *Brophy* Claim Against**
**The Insider Seller Defendants**

174. Plaintiff repeats and realleges each and every allegation above as if set forth in full herein.

175. As directors and officers of Doximity, the Insider Seller Defendants owed fiduciary duties of loyalty and good faith to the Company.

176. The Insider Seller Defendants sold Doximity stock while in possession of material nonpublic information that artificially inflated the price of Doximity stock.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

177.    By selling Doximity stock while in the possession of material adverse nonpublic information that artificially inflated the price of Doximity stock, the Insider Seller Defendants exploited their positions at Doximity and breached their fiduciary duties to Doximity. The Insider Seller Defendants improperly benefited from their breaches of fiduciary duty and are liable to Doximity for their benefit therefrom.

## COUNT SIX
### Derivative Claim for Unjust Enrichment Against
### The Insider Seller Defendants

178.    Plaintiff repeats and realleges each and every allegation above as if set forth in full herein.

179.    By their wrongful acts and omissions, the Insider Seller Defendants were unjustly enriched at the expense of and to the detriment of Doximity, as a result of their compensation and director remuneration and the proceeds which they received as a result of their misstatements and insider trading, while breaching fiduciary duties owed to Doximity.

180.    The Insider Seller Defendants sold Doximity stock while in possession of material nonpublic information that artificially inflated the price of Doximity stock. As a result, the Insider Seller Defendants profited from their misconduct and were unjustly enriched through their exploitation of material and adverse inside information.

181.    Plaintiff, as a stockholder and representative of Doximity, seek on behalf of the Company an order of this Court ordering the Insider Seller Defendants to disgorge and furnish restitution to Doximity of all profits, benefits, and other compensation obtained by them for their wrongful conduct and fiduciary breaches.

## VIII.    PRAYER FOR RELIEF

**WHEREFORE, Plaintiff prays for relief and judgment, as follows:**

(a)     Declaring that Plaintiff may maintain this action on behalf of Doximity and that Plaintiff is an adequate representative of the Company;

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

(b)     Declaring that the Individual Defendants violated Section 14(a) and Section 21D of the Exchange Act;

(c)     Declaring that the Individual Defendants have breached and aided and abetted the breach of their fiduciary duties to Doximity and its stockholders;

(d)     Directing the Company to take all necessary actions to implement and maintain an effective system of internal controls and meaningful Board oversight;

(e)     Determining and awarding to Doximity the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(f)     Ordering the Insider Seller Defendants to disgorge and pay to the Company all profits, benefits, and other compensation obtained by their insider trading and breaches of fiduciary duties;

(g)     Ordering disgorgement of profits, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary duties;

(h)     Awarding Doximity restitution from the Individual Defendants, and each of them;

(i)     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys', consultants' and experts' fees, costs, and expenses; and

(j)     Granting such other and further relief as the Court may deem just and proper.

## IX.    JURY DEMAND

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Dated: September 13, 2024                    **WEISS LAW**

**OF COUNSEL:**                    By:    */s/ Joel E. Elkins*
                                          Joel E. Elkins
**WEISS LAW**                             611 Wilshire Blvd., Suite 808
David C. Katz                             Los Angeles, CA 90017
Mark D. Smilow                            Telephone:  310/208-2800
305 Broadway, 7th Fl.                     Facsimile:   310/209-2348
New York, NY 10007
Telephone: (212) 682-3025                 *Attorneys for Plaintiff Stephen Bushansky*
Facsimile: (212) 682-3010

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

Email: dkatz@weisslawllp.com
         msmilow@weisslawllp.com

Joshua M. Rubin
Jonathan Meer
4 Brighton Rd., Ste. 204
Clifton, NJ 07014
Email: jrubin@weisslawllp.com
         jmeer@weisslawllp.com

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT